UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEOTA BLACKNOR, and DEMOND PEARSON, *Individually and o/b/o D.P., a Minor,*

Plaintiffs,

-against-

GARDEN CITY UNION FREE SCHOOL DISTRICT, DEVELOPMENTAL DISABILITIES INSTITUTE, DELL TRANSPORTATION, ROBERT PATE, *in his individual and official capacity*, HUNTINGTON HOSPITAL, NORTHWELL HEALTH, and JANE and JOHN DOES 1-10,

Defendants.

**MEMORANDUM & ORDER**
**25-CV-2169 (NGG) (AYS)**

NICHOLAS G. GARAUFIS, United States District Judge.

On April 18, 2025, Plaintiffs Leota Blacknor and Demond Pearson, individually and on behalf of their Black, autistic, and non-verbal, 16-year-old son, D.P., (collectively, "Plaintiffs"), commenced this action against Defendant Garden City Union Free School District (the "School District" or "GCUFSD"), as well as four private organizations and their employees: Defendants Developmental Disabilities Institute, Inc. s/h/a[1] Developmental Disabilities Institute (the "Disabilities Institute" or "DDI"); Dell Transportation Corp. ("Dell Transportation" or "Dell"); Northwell Healthcare, Inc. ("Northwell Health") and its subsidiary, Huntington Hospital (together with Northwell Health, the "Hospital Defendants" or the "Hospitals"); 10 unnamed individuals alleged to be employed by the aforementioned defendants, Jane and

[1] Three Defendants are sued under incomplete names. The court takes judicial notice of their full legal names, which are: Northwell Healthcare, Inc.; Developmental Disabilities Institute, Inc. s/h/a Developmental Disabilities Institute; and Dell Transportation Corp. (Dkts. 7, 13, 46, 47-2 56).)

John Does 1-10; and Robert Pate, an employee of Dell Transportation, "in his individual and official capacity." (Compl. (Dkt. 1) ¶¶ 1-2; Second Am. Compl. ("SAC") (Dkt. 34) ¶¶ 1-2.)

Plaintiffs' claims arise from two separate (but related) incidents that occurred over approximately four hours on Wednesday, September 7, 2022, after D.P. became aggressive on the after-school bus home, bit a bus attendant, and scratched two students. (SAC ¶¶ 32, 37, 57.) According to Plaintiffs, Defendants' response to D.P.'s behavior on the bus and subsequent treatment of them at the treating hospital constituted discrimination on account of D.P.'s disability and their race in violation of three federal statutes: Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132; Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); and Section 1981 of the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981 ("Section 1981"). (SAC ¶¶ 3-5 (summarizing claims against GCUFSD, Dell, DDI, the Doe defendants, and Mr. Pate arising from the bus incident), ¶¶ 6-8 (summarizing claims against the Hospitals arising from the hospital incident).)

On August 13, 2025, Plaintiffs filed a second amended complaint—the operative pleading in this case (hereinafter referred to as the "complaint"). (SAC.) On September 5, 2025, the School District, Disabilities Institute, Dell Transportation, and the Hospital Defendants (collectively, the "Moving Defendants") filed four individual motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] (Hospitals Mot. (Dkt. 40-3); GCUFSD Mot. (Dkt. 43-4); Dell Mot.

[2] All subsequent references to Rules are to the Federal Rules of Civil Procedure. When quoting cases, unless otherwise noted, all alterations are adopted and all citations, emphases, internal quotation marks, and ellipses are omitted.

(Dkt. 47-1); DDI Mot. (Dkt. 53-2).) On October 3, 2025, Plaintiffs filed a consolidated opposition to those motions. (Pls.' Consolidated Opp'n ("Pls.' Opp.") (Dkt. 41).) The Moving Defendants filed separate reply briefs on October 15, 2025. (Hospitals Reply (Dkt. 42); GCUFSD Reply (Dkt. 45); Dell Reply (Dkt. 49); DDI Reply (Dkt. 55).)

For the reasons that follow, the court GRANTS the Moving Defendants' motions to dismiss and DISMISSES the complaint WITH PREJUDICE.

## I. BACKGROUND

The following facts are taken from the complaint and the Individual Education Program[3] in effect for D.P. during the 2022-2023 school year (the "IEP"), (Dkt. 43-3).[4] Although the court

---

[3] The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*—which offers federal funds to states in exchange for their commitment to furnish a "free appropriate public education" or "FAPE" to all children with certain disabilities—requires all eligible public-school students to have an "individualized education program" or "IEP." 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i), 1414(d). By law, an IEP must include certain information, including both special education "instruction" tailored to meet the child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction—including, when necessary, specific transportation recommendations related to the student's disability to travel to and from school. 20 U.S.C. §§ 1401(26), 1401(29), 1414(d). *See generally Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158-61 (2017) (describing the IDEA and its interaction with other civil rights laws).

[4] In considering a Rule 12(b)(6) motion to dismiss, the court may consider documents "integral" to the complaint. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *see also Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (same). The IEP is "integral" to the complaint because rather than "[m]erely mentioning" or offering "limited quotations from" the IEP, the complaint "relies heavily upon its terms and effect." *Goel*, 820 F.3d at 559; *see also Watson Lab'ys, Inc.*, 101 F.4th 223, 235 n.5 (2d Cir. 2024). Specifically, the IEP is referenced repeatedly in the

treats the well-pleaded allegations in the complaint as true, it disregards any facts alleged in the complaint that contradict the evidence contained in the IEP.[5]

## A. Background Facts

### 1. The Parties

Ms. Blacknor and Mr. Pearson, who are Black, are individual residents of Long Island, New York. (SAC ¶¶ 14-15.) Their son, D.P., is Black and diagnosed with autism. (*Id.* ¶¶ 4, 16, 23.)

GCUFSD is a public school district located in Long Island that contracts with private organizations to provide state-approved special education and related support services—including the Disabilities Institute and Dell Transportation. (*Id.* ¶¶ 17, 24.) For certain students with disabilities, the School District contracts with the Disabilities Institute to provide special educational services at a location in Huntington, New York, and with Dell Transportation to provide bus transportation services to and from the Disabilities Institute's Huntington campus. (*Id.* ¶¶ 17-19, 25, 32, 115.)

Huntington Hospital is a nonprofit community hospital and subsidiary of Northwell Health, the latter being a private, not-for-profit integrated healthcare network. (*See id.* ¶¶ 20-21.)

---

complaint and forms the basis of, at least in part, the disability discrimination claims alleged in Count One and the negligent supervision and equal protection claims alleged in Counts Two and Three, respectively. (SAC ¶¶ 41-43, 46, 95, 99, 100, 102, 127, 128, 164.) Consequently, the court draws facts directly from the IEP because it is "integral" to the complaint.

[5] "While the [c]ourt must accept the facts as alleged in the complaint, when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the [c]ourt need not accept the allegations contained within the complaint as true." *Zoulas*, 400 F. Supp. 3d at 48; *see also RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 143 (S.D.N.Y. 2023) (same).

2. D.P.'s Disability and Special Accommodations

At all relevant times, D.P. was a 16-year-old, non-verbal, special-needs student with autism within the School District. (SAC ¶ 4; IEP at 2.) He was classified as a child with a disability under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and pursuant to that act, given an individualized education program that set out certain guidelines for the "instruction" and "supportive services" he required during the 2022-2023 school year. *See* 20 U.S.C. §§ 1401(14) (defining IEP), 1414(d) (specifying IEP requirements). As set forth in his IEP, D.P. received special education services from the Disabilities Institute and was transported to and from the institute's Huntington campus on a bus provided by Dell Transportation. (SAC ¶¶ 23, 32; *see also* IEP at 8, 10.)

Although D.P. "demonstrates normal muscle tone and range of motion throughout his upper extremities," he exhibits notable symptoms of his disability including "self-injury, staff aggression, [and] peer aggression." (IEP at 3-4.) D.P. engages in "self-injurious behavior, such as banging his head or hitting himself in the head," (SAC ¶ 27), and is physically aggressive towards others. (IEP at 2.) On different occasions described throughout the complaint, D.P. has scratched, bit, and/or headbutted his teachers and peers—necessitating their medical attention. (SAC ¶¶ 57, 82, 89; *see also* IEP at 2 (noting that D.P. "has demonstrated an increase in . . . self-injury and staff aggression").)

As a result of these symptoms, the IEP states that D.P. will be provided with the following "special transportation accommodations": (1) "Adult Supervision" on a "Bus with an Individual Attendant"; (2) "Curb to Curb" pick-up and drop-off; and (3) "a Harness." (IEP at 10; *see also* SAC ¶¶ 23 ("D.P. is required to be securely strapped within a protective harness when riding the

school bus to and from school."), 95 (alleging that D.P.'s bus accommodations include "being assigned an individual attendant").)

### B. Plaintiffs' Allegations

This case stems from two incidents that occurred after "difficulties" with D.P.'s after-school dismissal on Wednesday, September 7, 2022, during which D.P. initially resisted boarding the bus home, engaged in self-injurious behavior, and became aggressive toward staff. (SAC ¶¶ 33, 88.)

#### 1. The Bus Incident

The first incident occurred on the after-school bus home. On the bus, D.P. bit a bus attendant and scratched two other students. (*Id.* ¶¶ 45, 57.) His behavior prompted Dell Transportation's bus staff to call emergency first responders. (*See Id.* ¶ 36, 57-59.) Police and emergency medical technicians arrived and took D.P. to Huntington Hospital by ambulance. (*Id.* ¶¶ 36, 39.)

At approximately 3:30 p.m., via telephone, three Caucasian Disabilities Institute employees told Ms. Blacknor and Mr. Pearson that "some sort of incident" had occurred on the bus, "someone was bitten," and D.P. was being taken to Huntington Hospital. (*Id.* ¶¶ 33-36, 71.) On the way to the hospital, Ms. Blacknor and Mr. Pearson contacted various personnel from the School District and Dell Transportation, who were unable to provide more information about the bus incident or D.P.'s condition. (*Id.* ¶¶ 37-47.)

#### 2. The Hospital Incident

The second incident involves the alleged mistreatment Plaintiffs faced at Huntington Hospital by unnamed medical staff, referred to in the complaint as a "nurse" and a "doctor."

At approximately 4:15 p.m., Ms. Blacknor arrived at Huntington Hospital to find D.P. restrained to a hospital bed surrounded by

police officers and medical staff. (*Id.* ¶¶ 47, 51.) Also in the room were the three Caucasian Disabilities Institute employees whom she had spoken to on the phone. (*Id.* ¶ 51.) Ms. Blacknor then learned that on the after-school bus home, D.P. had become aggressive and injured three passengers, and that bus staff from Dell Transportation had called police and emergency medical professionals in response. (*Id.* ¶ 57.)

Soon after, "a nurse" entered the room and asked to "insert an intravenous needle into [D.P.'s] hand to conduct laboratory tests." (*Id.* ¶ 53.) Ms. Blacknor declined the nurse's request and explained that D.P. cannot "tolerate needles." (*Id.*) Ms. Blacknor also told the nurse that the "restraint cuffs" on D.P.'s wrists "severely restrained" the "free use of his hands," and thus, his ability to communicate.[6] (*Id.* ¶ 56.) The nurse did not remove the restraints.

At about 5:30 p.m., Ms. Blacknor and Mr. Pearson asked the nurse to remove the restraints so D.P. could use the bathroom. (*Id.* ¶ 60.) The nurse refused and "instructed" them to "use a handheld urinal"—even after Mr. Pearson explained why D.P. would not use the urinal and "plea[ded] for the nurse to remove the restraints so that [D.P.] could [use] the bathroom to urinate with privacy and dignity." (*Id.* ¶¶ 60, 63.) As a result, Mr. Pearson was "forced" to "manually remove and expose D.P.'s penis . . . in a futile attempt to force D.P. to urinate into the handheld urinal, causing utter humiliation and embarrassment to D.P. and his parents." (*Id.* ¶ 64.)

At approximately 6:30 p.m., after two failed attempts at using the handheld urinal and an additional 20-minute monitoring period of D.P.'s behavior, the nurse removed the restraint cuffs and

[6] D.P. requires a special iPad to communicate. Although D.P. "can communicate using some sign language" and gesturing, these forms of communication are limited and "not always reliable." (IEP at 3.)

Mr. Pearson escorted D.P. to the bathroom. (*Id.* ¶¶ 65-68.). While in the bathroom, the nurse asked Mr. Pearson for D.P.'s urine sample, which he provided. (*Id.*) Upon receipt of D.P.'s discharge papers, Ms. Blacknor and Mr. Pearson learned that the sample was used for a drug test without their knowledge or consent. (*Id.* ¶ 73.)

Shortly thereafter, "the doctor" entered the room, "introduced himself to D.P.," addressed Ms. Blacknor, and then "abruptly left." (*Id.* ¶ 69.) When he returned, the doctor "specifically asked the Caucasian women" in the room (the three Disabilities Institute employees who had alerted Ms. Blacknor and Mr. Pearson about the "difficulties" with D.P.'s dismissal and the bus incident) "whether they thought it was okay to discharge D.P." (*Id.* ¶ 71.) The women deferred to Ms. Blacknor, who informed the doctor that "it was okay with her" for D.P. to be discharged. (*Id.*)

At approximately 7:30 p.m., D.P. was discharged. (*Id.* ¶ 73.) Plaintiffs had spent about three hours in Huntington Hospital "with a complete lack of information as to why D.P. was being held and when he would be released." (*Id.* ¶¶ 70, 73-74.)

3. Plaintiffs' Claims and Requested Relief

Based on the two aforementioned incidents, Plaintiffs bring the following four Counts: (1) Count One: "Violations of Title II of the ADA"; (2) Count Two: "Negligent Supervision/Failure to Supervise" under Section 1983; (3) Count Three: "Violations of Right to the Equal Protections of the Law" under Section 1983; and (4) Count Four: "Violations of Rights Based on Race" under Section 1981.

Count One is brought against all Defendants based on their alleged involvement in either the bus incident or the hospital incident. Count Two arises solely from the bus incident and is brought against the School District, Disabilities Institute, and Dell Transportation. Count Three also arises from the bus incident but

is brought only against the School District. Count Four is brought against Dell Transportation for its alleged involvement in the bus incident and against the Huntington Hospital based on the alleged conduct of its medical staff during the hospital incident. (*Id.* ¶¶ 94-117 (Count One), 118-57 (Count Two), 158-68 (Count Three), 169-89 (Count Four); *see also* Tr. of 7/30/2025 Initial Conf. ("Initial Conf. Tr.") (Dkt. 64) at 6:03-7:13 (explaining which Counts are being brought against which Defendants).)

On each Count, Plaintiffs seek monetary damages "in excess of five million dollars," along with punitive damages on Counts Two, Three, and Four. (SAC ¶¶ 117 (Count One), 157 (Count Two), 168 (Count Three), 189 (Count Four); *see also id.* ¶ 189(a)-(d) (same).) In their prayer for relief, Plaintiffs also request: (1) "Declaratory Judgment that [D]efendants willfully violated [P]laintiffs' rights secured by federal as [sic] alleged herein and a formal written apology for same"; and (2) "Mandatory monitored training for all personnel of Defendant entities who come into contact with members of [D.P.]'s class regarding the safety, protection and compassion needed for children with disabilities such as D.P." (*Id.* ¶ 189(e), (f).)

### C. Procedural History

On April 18, 2025, Plaintiffs commenced this action by filing the initial complaint. (*See generally* Compl.) The Hospital Defendants, School District, and Disabilities Institute each requested a pre-motion conference and submitted a letter outlining their bases for dismissal, including Plaintiffs' failures to state a claim for disability or race discrimination under Title II, Section 1983, or Section 1981. (Dkts. 14, 18, 19.)

On June 10, 2025, Plaintiffs filed a first amended complaint. (*See generally* First Am. Compl.) Each Moving Defendants filed a pre-motion conference letter outlining the same (or similar) pleading deficiencies in Plaintiffs' discrimination claims.

(Dkts. 25, 26, 28, 29.) At a July 17, 2025 pre-motion conference, this court set a briefing schedule on the Moving Defendants' motions to dismiss. The court also encouraged Plaintiffs to file an amended pleading addressing the issues raised in the pre-motion conference letters and discussed on the record at the pre-motion conference. (*See* Min. Entry Dated 7/17/2025.)

The parties then proceeded to an initial conference before Magistrate Judge Anne Y. Shields on July 30, 2025 in order to initiate discovery. (*See* Initial Conf. Tr. at 5:16-6:02.) After a lengthy discussion about various pleading deficiencies in the first amended complaint, Magistrate Judge Shields gave Plaintiffs the opportunity to amend their complaint for a second time. Magistrate Judge Shields also advised Plaintiffs that any amended pleading should account for all issues raised in the Moving Defendants' pre-motion conference letters and discussed on the record. (*See generally* Initial Conf. Tr.)

On August 13, 2025, Plaintiffs filed the operative pleading in this case. (SAC.) Pursuant to the court's briefing schedule, the Moving Defendants filed their respective, fully briefed motions to dismiss the complaint on October 15, 2025.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible" only when the plaintiff pleads sufficient "factual content allowing the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (same). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or a "formulaic recitation

of the elements of a cause of action" will be dismissed. *Twombly*, 550 U.S. at 555.

The court must then evaluate the motion by "accept[ing] all well-pleaded allegations as true and interpret[ing] them favorably to the [p]laintiffs." *Watson Lab'ys, Inc.*, 101 F.4th 223, 235 (2d Cir. 2024). The same rules do not apply for conclusions, however. *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021). The court "need not 'credit a complaint's conclusory statements without reference to its factual context,'" *Watson Lab'ys*, 101 F.4th at 235 n.5 (quoting *Iqbal*, 556 U.S. at 686-87), nor consider "legal conclusions couched as factual allegations," *State Farm Mut. Ins. Co. v. Ricciardi*, 782 F. Supp. 3d 1, 8 (E.D.N.Y. 2025), *aff'd sub nom. State Farm Mut. Auto. Ins. Co. v. Ricciardi*, 2026 WL 1412937 (2d Cir. May 20, 2026).

After separating conclusions from well-pleaded facts, the court must determine whether the facts make it plausible—not merely possible—that the plaintiff is entitled to the relief she seeks. *See Twombly*, 550 U.S. at 555. If the facts do not "nudge[] their claims across the line from conceivable to plausible," then the "complaint must be dismissed." *Id.* at 570.

## III. DISCUSSION

For the following reasons, the court grants the Moving Defendants' motions to dismiss and dismisses the complaint with prejudice.

### A. Individual Defendants

Plaintiffs name as defendants, individuals Robert Pate and "Jane and John Does 1-10." Although the issue of whether these individuals are properly named as defendants has not been briefed, for the following reasons, any claims brought against these defendants are dismissed.

1. Robert Pate

While Mr. Pate is named as a defendant, the complaint does not make clear whether Plaintiffs actually bring any claims against him. (*See* SAC ¶¶ 94-117 (under Count One, naming all defendants but Mr. Pate), 118-57 (under Count Two, naming only GCUFSD, DDI, and Dell), 158-68 (bringing Count Three solely against GCUFSD), 169-89 (bringing Count Four solely against Dell and Huntington Hospital).) Of the nearly 200 paragraphs across the 40-page complaint, Mr. Pate is named in four—and the factual allegations in those paragraphs do not state a cause of action. (*Id.* ¶¶ 2, 3, 80, 81.) Nevertheless, Plaintiffs name Mr. Pate as a defendant "individually and in his official capacity," and allege that alongside the other defendants he "committed acts under color of law, depriving Plaintiffs of rights secured by the Constitution and laws of the United States, failing to provide an adequate free education, failing to provide adequate medical treatment, negligent supervision, failure to supervise, causing mental anguish, pain and suffering, causing monetary damages and infliction of physical and emotional injury, pain and suffering upon all Plaintiffs." (*Id.* ¶ 2.)

These conclusory allegations are devoid of factual support and thus fail to state a claim under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *see also Morales v. City of New York*, 59 F. Supp. 3d 573, 582 (S.D.N.Y. 2014) ("Such naked assertions devoid of further factual enhancement are plainly insufficient."). They also fail to provide adequate notice to Mr. Pate under Rule 8. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) ("[Rule 8] requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."). Consequently,

Mr. Pate and any claims against him are dismissed from this action.

2. Jane and John Does 1-10

Plaintiffs name ten unidentified individuals as defendants, and in the portions of the complaint pertaining to Count One, purport to bring various Title II claims against these "Jane and John Does 1-10." (*See* SAC ¶¶ 97, 98; *see also id.* ¶¶ 2, 3 (alleging that all Defendants violated federal law by, *inter alia*, "failing to provide an adequate free education" and "fail[ing] to ensure the safety of D.P. and others on the date of the subject [bus] incident").) However, Title II only applies to "public entities"—not individuals.

"Only public entities are subject to Title II." *City & Cnty. of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, 610 (2015); *see also Green v. City of New York*, 465 F.3d 65, 74 (2d Cir. 2006). Crucially, "[a]n individual cannot be a public entity." *Charles v. City of New York*, No. 23-CV-3108 (EK) (PCG), 2026 WL 670174, at *7 (E.D.N.Y. Mar. 10, 2026). Thus, "there is no individual liability under . . . Title II of the ADA." *Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007). Therefore, Plaintiffs' Title II claims against individuals "Jane and John Does 1-10" fail as a matter of law.[7] *See Green*, 465 F.3d at 76.

[7] Even if Plaintiffs had sufficiently alleged that "Jane and John Does 1-10" were government actors sued in their official capacities, Count One would still fail because Plaintiffs only seek monetary damages. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (holding that Title II claims may proceed against individual defendants *only* if they are government officers acting in their official capacity *and* the claims seek prospective injunctive relief). These claims are also dismissed for failure to satisfy Rule 8, as Plaintiffs fail to allege sufficient facts explaining *these* defendants' role and what *these* defendants did in violation of federal law to survive dismissal. *See Atuahene*, 10 F. App'x at 34; *Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) ("It is well-established in this [c]ircuit that plaintiffs cannot simply lump defendants together for pleading purposes.").

### B. Count One: Title II of the ADA

Count One is dismissed for failure to state a claim against any of the Moving Defendants.

#### 1. Dell, DDI, and the Hospitals Are Not Public Entities

Dell Transportation, the Disabilities Institute, and the Hospital Defendants (hereinafter referred to collectively as the "Private Defendants") argue that Count One must be dismissed because Plaintiffs fail to allege facts permitting the reasonable inference that each defendant is a "public entity" under Title II. (Dell Mot. at 3; DDI Mot. at 6-7; Hospitals Mot. at 9.) Plaintiffs respond that they have sufficiently pleaded that the Private Defendants are subject to the ADA as "instrumentalities of government agencies that meet the public function test for treatment of mental illness and disability." (Pls. Opp. at 10 (first citing SAC ¶¶ 112-16; and then citing *Ruffler v. Phelps Mem'l Hosp.*, 453 F. Supp. 1062, 1068 (S.D.N.Y. 1978)); *see also id.* at 11-13 (arguing that the Private Defendants' motions should be denied because these defendants "are public entities and meet the public function test under ADA Title II").) The Private Defendants reply that: (1) the complaint's conclusory allegations that the Disabilities Institute and Dell Transportation are "instrumentalities of the [School District]" are insufficient; (2) Plaintiffs ignore Second Circuit precedent holding that private hospitals are not "public entities" under Title II; and (3) the "public function" test—used to determine whether a defendant is a "state actor" for purposes of Section 1983—has no bearing on whether a defendant is a "public entity" amenable to suit under Title II. (Dell Reply at 5; DDI Reply at 1; Hospitals Reply at 1, 2.)

"Only public entities are subject to Title II." *Sheehan*, 575 U.S. at 610. The ADA defines the term "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or

local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1); *see also Tardif v. City of New York*, 991 F.3d 394, 403 (2d Cir. 2021) (same). Under this definition, private government contractors (like the Disabilities Institute and Dell Transportation) and private organizations that receive government funds (like Huntington Hospital and Northwell Health) are not considered "public entities" unless they also constitute a "department, agency, special purpose district, or other instrumentality of a State or States or local government." *Green*, 465 F.3d at 78 (holding that private hospitals receiving federal funds are not "public entities" under Title II).

*a. Dell and DDI are not instrumentalities.*

Plaintiffs fail to allege sufficient facts supporting the reasonable inference that either Dell Transportation or the Disabilities Institute is "an instrumentality of [the School District]." (SAC ¶¶ 115 ("Dell is an instrumentality of GCUFSD which as a public school district is municipal entity"), 116 ("Under Title II of the ADA[,] DDI is an instrumentality of the GCUFSD school district.").)

The term "instrumentality" as used in Title II is not statutorily defined. Instead, the Second Circuit defined the term in its 2006 opinion, *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006).

In *Green*, the Second Circuit was asked "to determine whether 'instrumentality,' 42 U.S.C. § 12131(1)(B), was meant to include private hospitals that contract with a municipality to provide services." 465 F.3d at 78. Answering the question in the negative, the court concluded that "to be an instrumentality, an entity must somehow belong to the government or have been created by it." *Id.* at 79. Stated differently, the Second Circuit found that the term "instrumentality," as used in Title II, refers to "a creature of a state or municipality"—i.e., an entity "set up" or "created" by "a municipality or state whose ends it serves." *Id.* Pursuant to this definition, the Second Circuit then held that: "A private hospital

performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity. Instead[,] it is a parallel private entity." *Id.* (affirming dismissal of Title II claim against St. Luke's-Roosevelt Hospital Center because it "is a private, and not a public, entity").

Plaintiffs allege that Dell Transportation is a "busing company that provides bus transportation services to the [School District] and its students." (SAC ¶ 115.) At most, the complaint alleges that Dell is a busing company "contracted by [the School District]" to "provide bus transportation services" to certain students, including D.P. (*Id.* ¶¶ 19, 115.) Under *Green*, these allegations are insufficient to establish that Dell Transportation is a public entity. 465 F.3d at 79. As *Green* makes clear, a private entity "performing services pursuant to a [government] contract . . . even if it does so according to the [government]'s rules and under its direction, is not a creature of any governmental entity"—it is a "parallel private entity." *Id.* Consequently, the alleged contractual relationship between Dell Transportation (a private bus company) and the School District (a public entity) does not render the former an "instrumentality" under Title II. *Id.* And because there are no factual allegations allowing the court to infer that Dell Transportation somehow "belong[s] to" or was "created by" the School District, Dell Transportation is not subject to Title II. *Id.*

For similar reasons, Plaintiffs also fail to allege sufficient facts to support their conclusory allegation that the Disabilities Institute is "an instrumentality of the [School District]." (SAC ¶ 116.) In fact, the complaint specifically states that the Disabilities Institute is a "*private* entity." (*Id.* ¶ 17 (emphasis added).) Because Plaintiffs allege that the Disabilities Institute is a private entity and fail to allege facts suggesting that the institute otherwise "belong[s]

to" or was "created by" the School District, the Disabilities Institute is not subject to Title II. *Green*, 465 F.3d at 79; *see also*, *Cain v. Mercy Coll.*, No. 20-CV-2262 (LLS), 2020 WL 4194637, at *6 (S.D.N.Y. July 20, 2020) (dismissing Title II claims under Rule 12(b)(6) because as "a private educational institution" the defendant "[is] not subject to Title II").

For Plaintiffs' Title II claims against Dell Transportation and the Disabilities Institute to survive dismissal under Rule 12(b)(6), the complaint must present sufficient factual content to allow the court to reasonably infer that—at a minimum—each defendant was "set up" (i.e., created) by the School District. *Green*, 465 F.3d at 79. Because Plaintiffs fail to do so, Count One is dismissed against Dell Transportation and the Disabilities Institute.

*b. Private hospitals are not public entities.*

Plaintiffs' Title II claims against the Hospital Defendants are also foreclosed by the Second Circuit's 2006 opinion in *Green*, which, as just explained, held that private hospitals are not subject to Title II. 465 F.3d at 79.

Plaintiffs allege that Huntington Hospital is a "nonprofit community hospital" and "a subsidiary of [Northwell Health]." (SAC ¶ 20.) In turn, Plaintiffs allege that Northwell Health "is a healthcare provider and is the parent organization of [Huntington Hospital]" with "[h]eadquarters . . . located in New Hyde Park, State of New York, in the County of Nassau." (*Id.* ¶ 21.) Taken as true, these facts fail to allege that the Hospital Defendants constitute a "department, agency, special purpose district, or other instrumentality of a State or States or local government" under Title II. *Green*, 465 F.3d at 78. They also fail to allege that these defendants are entities "created by" or "creature[s] of" a government entity. *Id.* at 79. Therefore, Count One is dismissed against the Hospital Defendants. *See id.*; *see also Adams v. Town of Clarkstown, et al.*, No. 24-CV-5147 (NSR), 2026 WL 2838845,

at *7 (S.D.N.Y. Sept. 22, 2026) ("Because [the defendant] is alleged to be a private nonprofit corporation rather than an entity created by or constituting a government entity, [it] is not subject to liability under Title II."); *Vale v. Northwell Health*, No. 17-CV-7111 (PKC) (LB), 2018 WL 1115345, at *1 (E.D.N.Y. Feb. 26, 2018) (dismissing Title II claim against Northwell Health and its subsidiary hospital because "Northwell Health is a private medical services provider").

c. *Section 1983's public function test is irrelevant to a Title II analysis.*

Plaintiffs' argument that the Disabilities Institute, Dell Transportation, and the Hospital Defendants "are subject to the ADA" because they "meet the public function test under ADA Title II," (Pls. Opp. at 10-11), fails because the "public function" test is irrelevant to a Title II analysis. *See Green*, 465 F.3d at 78.

The definition of "public entity" is unique to Title II and differs from that of a private entity "acting under color of state law" by, for example, performing a traditional and exclusive "public function" under Section 1983. *Compare* 42 U.S.C. § 12131(1)(A)-(B) (defining "public entity" for purposes of Title II), *with* 42 U.S.C. § 1983 (enumerating the "under color of state law" requirement), *and Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019) (explaining that a private entity acts under color of law for purposes of Section 1983 when it is "performing a traditional, exclusive public function"). Thus, the two terms are subject to distinct analyses, and, contrary to Plaintiffs' assertions, Section 1983's "public function test" does not apply to Title II.

In fact, the cases on which Plaintiffs rely demonstrate this point. *See Halleck*, 587 U.S. at 814 (Section 1983); *Amira v. Maimonides Hosp.*, No. 21-CV-3976 (RPK) (TAM), 2022 WL 18034533, at *6-8 (E.D.N.Y. Nov. 30, 2022) (Section 1983); *Ruffler v. Phelps*

*Mem'l Hosp.*, 453 F. Supp. 1062, 1067 (S.D.N.Y. 1978) (Section 1983). Thus, Plaintiffs' attempt to use Section 1983's "state action" analysis to support the claim that they "plausibly pleaded their Title II ADA claims" against the Disabilities Institute, Dell Transportation, and the Hospital Defendants is inapt and futile. (Pls.' Opp. at 10.)

2. Plaintiffs Fail to State a Title II Claim Against the School District.

Count One is dismissed against the School District for failure to state a claim because emotional distress damages are not available under Title II. *Doherty v. Bice*, 101 F.4th 169, 171, 173, 175 (2d Cir.) ("emotional distress damages are not available under Title II of the ADA"), *cert. denied*, 145 S. Ct. 381 (2024).

The School District argues that Count One should be dismissed because "emotional distress damages are not available under Title II" and "the [c]omplaint seeks only emotional distress damages for that cause of action."[8] (GCUFSD Mot. at 5, 7.) While not directly addressing whether or not emotional distress damages are available under Title II or explaining why the monetary damages that they seek go beyond emotional distress damages, Plaintiffs respond that their Title II damages claim "should succeed" because (a) they have "adequately asserted emotional harm, physical harm, and psychological harm," (b) "monetary damages are available under the ADA," and (c) the complaint "plausibly and sufficiently assert[s] that Defendant engaged in intentional discrimination." (Pls. Opp. at 15.) The School District replies by reiterating that Count One should be dismissed because "emotional distress damages are not recoverable under

[8] Because it is sufficient to dismiss Count One based solely on the nature of the relief sought (emotional distress damages), the court only briefly addresses the School District's additional arguments in explaining why any further amendment to the complaint would be futile. *Infra* Section III.E.

Title II" and the complaint "seeks only emotional distress damages for that cause of action." (GCUFSD Reply at 4.) The court agrees.

Under Title II, Plaintiffs request "monetary damages in excess of five million dollars," (SAC ¶ 117), for "immense psychological injuries, including severe and continuing emotional distress," (*id.* ¶ 111). (*See also id.* ¶¶ 103 ("humiliation," "psychological damage," "immense fear"), 104 ("severe and continuing emotional distress"), 111 ("humiliation, embarrassment, and emotional turmoil"; "continued emotional pain and suffering"). At most, Plaintiffs allege that the emotional distress they have suffered has manifested in emotional and physical reactions, including new fears and anxieties, and "a marked increase in [D.P.'s] self injurious episodes." (SAC ¶¶ 103, 110.) In this circuit, Plaintiffs' claims are properly categorized as "[c]laims for emotional distress." *Pressley v. ABJ Home Care Inc.*, No. 24-CV-0882 (RPK) (JRC), 2026 WL 880207, at *9 (E.D.N.Y. Mar. 31, 2026) (collecting cases); *see also Brown v. Zeta Charter Sch.*, No. 23-CV-5593 (DEH), 2024 WL 4265691, at *4 (S.D.N.Y. Sept. 23, 2024) (concluding that the plaintiff's Title II damages claims based only "on her and her daughter's pain and suffering" constituted impermissible emotional distress damages (collecting cases)); *Press v. Concord Mortg. Corp.*, No. 08-CV-9497 (PKC) (GWG), 2009 WL 6758998, at *7 (S.D.N.Y. Dec. 7, 2009) (explaining the "three categories of emotional distress or mental anguish claims"), *report and recommendation adopted as modified*, No. 08-CV-9497 (KTD), 2010 WL 3199684 (S.D.N.Y. Aug. 11, 2010). Thus, Plaintiffs' Title II claims "fail as a matter of law." *Doherty*, 101 F.4th at 175; *see also Brown*, 2024 WL 4265691, at *5 ("[B]ecause the [c]omplaint only seeks damages for emotional harm, it fails to state claim under the ADA.").

Furthermore, Plaintiffs' argument that monetary damages are recoverable under Title II upon a showing that the challenged

discrimination was "intentional," (Pls. Opp. at 15), fails because this rule is limited to compensatory damages *excluding* emotional distress damages. *See Doherty*, 101 F.4th at 175. Instead, to state a viable claim for damages under Title II, a plaintiff must seek actual damages, also referred to as "out-of-pocket expenses." *Brown*, 2024 WL 4265691, at *5. However, as the portions of the complaint pertaining to Count One show, Plaintiffs do not seek to recover such costs. Although Plaintiffs allege that since the incidents of September 7, 2022, they have suffered "serious physical injuries," (SAC ¶ 104), and that D.P. has "spent several months attending exposure therapy sessions" for his "new and immense fear of buses and sirens," (*id.* ¶ 103), the complaint does not seek compensation for any related medical bills or therapy costs (nor are such costs mentioned). Instead, Plaintiffs request damages only for emotional distress. Again, that request warrants dismissal of Plaintiffs' Title II claims. *Doherty*, 2023 WL 5103900, at *6, *aff'd*, 101 F.4th 169 (2d Cir. 2024); *see also Brown*, 2024 WL 4265691, at *5. Therefore, Count One is dismissed.

### C. Counts Two & Three: Section 1983

Counts Two and Three are dismissed for failure to state a claim against any defendant.

#### 1. Dell and DDI Are Not State Actors

Dell Transportation and the Disabilities Institute argue that Plaintiffs' Section 1983 claims must be dismissed because Plaintiffs fail to allege that they acted "under the color of state law." (Dell Mot. at 2-4; DDI Mot. at 10.) Plaintiffs respond that they have sufficiently pleaded that these defendants are "state actors" pursuant to the "public function" and "joint action" tests for state action under Section 1983. (Pls. Opp. at 16-17.) Dell Transportation and the Disabilities Institute reply that they are not state actors under either test. (Dell Reply at 3-6; DDI Reply at 3-5.)

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. Importantly, Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To state a Section 1983 claim, a plaintiff must allege two essential elements: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (same). To satisfy the first requirement, a plaintiff "must show" that each "defendant acted under color of [law]." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982).

The Second Circuit has identified three main tests to determine whether a private entity has acted "under color of law":

> For the purposes of [S]ection 1983, the actions of a nominally private entity are attributable to the state (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity

> has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam)). Under each test, the "fundamental question" is "whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In answering this question, the court must consider "'the specific conduct of which the plaintiff complains,' rather than the general characteristics of the entity." *Id.* (quoting *Sullivan*, 526 U.S. at 51).

Plaintiffs argue that Dell Transportation and the Disabilities Institute acted under color of law pursuant to the "public function" and "joint action" tests. They contend that through "their performance of a public function in the treatment of the mentally ill," these defendants "meet the public function test as decided in *Ruffler v. Phelps Mem'l Hosp.*, 43 F. Supp. 1062, 1068 (S.D.N.Y. 1978)," (Pls.' Opp. at 11, 16-17), and that as "willful participants" in the "joint action of education, supervision, care[,] and treatment for students of [the School District]" these defendants also meet the joint action test as "instrumentalities of [the School District]," (*id.* at 16-17). In essence, Plaintiffs argue that the state has undertaken to care for the "mentally ill," (Pls. Opp. at 11, 16-17), by (1) delegating aspects of this public function (special education and related support services) to the Disabilities Institute and Dell Transportation and (2) acting jointly with these defendants to provide care and treatment to mentally disabled public-school students. *Cf. Sybalski*, 546 F.3d at 258. However, an analysis under either test demonstrates that they are not state actors.

*a. Public Function Test*

Under the public function test, "a private entity may qualify as a state actor when it exercises powers traditionally exclusively reserved to the State." *Halleck*, 587 U.S. at 809. "[T]o qualify as a traditional, exclusive public function, the government must have traditionally *and* exclusively performed the function." *Id.* (emphasis in original). The Supreme Court has ruled that a variety of functions do not fall into this category, including, for example, providing special education for students who cannot be served by traditional public schools. *Id.* at 810 (citing *Rendell-Baker*, 457 U.S. at 842); *see also Phelan ex rel. Phelan v. Torres*, No. 04-CV-3538 (ERK), 2011 WL 6935354, at *9 (E.D.N.Y. Dec. 30, 2011) (same).

Plaintiffs argue that the Section 1983 violations in Count Two occurred in the context of the Disabilities Institute's and Dell Transportation's "treatment of the mentally ill." (Pls.' Opp. at 11, 17; *see also* SAC ¶¶ 125-27 (challenging defendants' implementation of the recommendations in D.P.'s IEP).) However, the Second Circuit has already concluded that this function does *not* satisfy the public function test because the care and treatment of the "mentally ill" and mentally disabled was not "a function traditionally and exclusively reserved by the state" of New York.[9] *Sybalski*, 546 F.3d at 259-60 (per curiam); *see also Doe v. Rosenberg*, 166 F.3d 507 (2d Cir. 1999) (per curiam) (concluding the

[9] Plaintiffs cite one case, *Ruffler v. Phelps Memorial Hospital*, 453 F. Supp. 1062 (S.D.N.Y. 1978), for the proposition that "treatment of the mentally ill is undoubtedly a 'public function' in New York." (Pls.' Opp. at 11 (citing *Ruffler*, 453 F. Supp. at 1068).) However, the Second Circuit has "subsequently rejected" both that proposition and the reasoning from *Ruffler*. *See Amira*, 2022 WL 18034533, at *7 n.5 (citing *Doe v. Rosenberg*, 166 F.3d 507 (2d Cir. 1999) (per curiam)); *Corrado v. Montefiore St. Luke's Cornwall Med. Ctr.*, No. 23-CV-7536 (NSR), 2024 WL 3413813, at *5 (S.D.N.Y. July 15, 2024). Therefore, "*Ruffler* is unpersuasive in this matter." *Corrado*, 2024 WL 3413813, at *5.

same). Therefore, the fact that Dell Transportation and the Disabilities Institute were involved in providing care and treatment to D.P. for his autism is insufficient to conclude that they are state actors under the public function test.

*b. Joint Action Test*

Under the joint action test, a private actor may engage in state action when "the entity is a willful participant in joint activity with the state." *Fabrikant*, 691 F.3d at 207. This standard is met when the private entity is "jointly engaged with state officials in the prohibited action." *Lugar*, 457 U.S. at 941 (1982). "It is not enough, however, for a plaintiff to plead state involvement in *some activity* of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved with *the activity that caused the injury* giving rise to the action." *Sybalski*, 546 F.3d at 257-58 (emphases in original). Nor is it enough to allege that a private actor has acted pursuant to a public contract. *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009) ("[A]cts of private contractors do not become acts of the government by . . . performing public contracts." (quoting *Rendell-Baker*, 457 U.S. at 841)).

Plaintiffs argue that Dell Transportation and the Disabilities Institute qualify as state actors under the joint action test as "willful participants" in the "joint action of education, supervision, care[,] and treatment for students of GCUFSD" because "Dell provides transportation to and from DDI under the direction and supervision of GCUFSD and DDI provides education to students with disabilities of GCUFSD." (Pls.' Opp. at 16-17 (citing SAC ¶¶ 17-19, 112-16).) This argument fails for two independent reasons.

First, Plaintiffs fail to allege that the School District participated in or was otherwise involved in any of the particular challenged acts. *See Sybalski*, 546 F.3d at 257-58. Instead, they attempt to hold the School District liable "in its capacity as the contractor of Defendants Dell and DDI," (SAC ¶ 123), and allege that the

School District violated federal law "by and through [its] agents Dell, DDI, and Jane and John Does 1-10," (*id.* ¶ 160).

Second, Plaintiffs' allegations that Dell Transportation and the Disabilities Institute are private entities "contracted by [the School District]" to provide "educational services to students with disabilities" and "safe transportation to . . . students with special needs," (SAC ¶¶ 18-19, 123), fail to satisfy the "joint action" test because "a private entity does not become a state actor merely because it performs under a state contract." *Marsh v. Healthfirst Health Plan*, No. 25-CV-5520 (HG) (LKE), 2026 WL 1430490, at *3 (E.D.N.Y. May 21, 2026) (collecting cases). Although the School District, Dell Transportation, and the Disabilities Institute might, by virtue of contractual relationships, be engaged jointly in the general *mission* of caring for mentally disabled public-school students, only their joint *acts* with the School District are subject to challenge as "state action" under the joint action test. *See Sybalski*, 546 F.3d at 258; *see also Phelan*, 2011 WL 6935354, at *13 (same). Because Plaintiffs' allegations are insufficient to show that the School District participated in, coerced, or significantly encouraged any of Dell Transportation's or the Disabilities Institute's challenged acts, or to find that the state was responsible for this conduct, the joint action test is not satisfied.

* * *

Plaintiffs assert that "Dell, DDI, and GCUFSD act under the color of state law and their agents and employees qualify as state actors." (SAC ¶ 119.) However, this conclusory allegation is not supported by facts indicating that either Dell Transportation or the Disabilities Institute acted in concert with a state entity or official to deprive Plaintiffs of their constitutional rights or that their conduct is otherwise fairly attributable to the state of

New York.[10] Thus, Plaintiffs' Section 1983 claims against Dell Transportation and the Disabilities Institute are dismissed for failure to satisfy the state action requirement.

2. Plaintiffs Fail to State a Section 1983 Claim Against the School District.

Counts Two and Three are dismissed for failure to state a claim against the School District because Plaintiffs do not satisfy *Monell's* policy-or-custom requirement.

The School District argues that "the [c]omplaint states no viable [Section] 1983 claims against the [School] District because it does not meet the standards required by *Monell*." (GCUFSD Mot. at 14.) Plaintiffs respond that they have "sufficiently and plausibly plead[ed] that there was a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounted to the deliberate indifference of the rights of D.P." as "exemplified in the failure to follow D.P.'s IEP and the differential treatment experienced by D.P. in comparison to the other Caucasian students on the Dell bus." (Pls. Opp. at 16 (citing SAC ¶¶ 26-46, 176-78).) The School District replies that the complaint fails to plausibly allege a *Monell* claim because Plaintiffs' "argument with respect to *Monell* liability appears to be premised solely on a failure to train and supervise [theory]," and the complaint "is devoid of any allegation of a 'deliberate indifference.' to a recurring situation." (GCUFSD Reply at 7-8.)

[10] Plaintiffs' allegations that Dell Transportation and the Disabilities Institute are "instrumentalit[ies] of GCUFSD," (SAC ¶¶ 121-22), are irrelevant to a Section 1983 analysis. The Second Circuit uses "three main tests" to determine whether the conduct of a nominally private entity satisfies Section 1983's state action requirement. *Barrows*, 24 F.4th at 135. Whether a private entity is an "instrumentality" of a public entity is not one of these tests. Instead, it is one way that a private entity might be found to satisfy Title II's public entity requirement. *See supra* Section III.B.1.

"For purposes of § 1983, school districts are considered to be local governments"—also referred to as "municipalities." *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 227 (S.D.N.Y. 2024); *J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 469 (S.D.N.Y. 2018) (same). "To assert a § 1983 claim against a municipality," such as the School District, "a plaintiff must satisfy the requirements of *Monell*." *Harris v. Nassau Cnty.*, No. 13-CV-4728 (NGG) (ST), 2016 WL 3023265, at *11 (E.D.N.Y. May 24, 2016). A plaintiff must allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)).

The policy-or-custom requirement is essential. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). That is because, "under § 1983, local governments are responsible only for their *own* illegal acts"—not the actions of their employees. *Id.* (emphasis in original). Thus, the policy-or-custom requirement operates as the shield protecting a municipality from vicarious liability. *Id.*; *see also Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) ("[A] municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee.").

A plaintiff can only satisfy *Monell*'s "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to

> provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Savarese*, 547 F. Supp. 3d at 354; *see also Connick*, 563 U.S. at 60-61 (same).

*a. Count Two: Negligent Supervision/Failure to Supervise*

In Count Two, Plaintiffs proceed on a failure to supervise theory against the School District. They allege that "GCUFSD, in its capacity as the contractor of Defendants Dell and DDI[,] did by and through [its] negligent supervision and failure to supervise Defendant Dell, cause[d] D.P. to be deprived of his substantive due process right of freedom from bodily restraint and Plaintiffs' . . . substantive due process rights as parents to direct the care, upbringing, and education of their child." (SAC ¶ 123.) They further allege that the School District's "failure to properly supervise and/or . . . negligent supervision of Defendants Dell and DDI permitted Dell's deliberate indifference to the safety and protection of D.P. resulting in the cascade of events [on September 7, 2022]," and that "Plaintiffs suffered and continue to suffer . . . monetary damages in excess of five million dollars" as a result. (*Id.* ¶¶ 129, 157.)

These allegations do not meet Section 1983's requirements for two reasons.

First, the allegations fail to suggest that the School District's failure to provide "adequate training or supervision" amounted to its *own* "deliberate indifference." *See Savarese*, 547 F. Supp. 3d at 354 (requiring that "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those

who come into contact with the municipal employees"). "To satisfy [Section 1983], a municipality's failure to train [or supervise] its employees in a relevant respect must amount to 'deliberate indifference' to the rights of persons with whom the untrained employees come into contact." *Connick*, 563 U.S. at 61. That is because, "only then" can the municipality's failure to train or supervise "be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* Here, Plaintiffs allege that the School District's "negligent supervision [of] and failure to supervise" its contractors Dell Transportation and the Disabilities Institute "permitted *Dell's* deliberate indifference to the safety and protection of D.P.," (SAC ¶¶ 128-29) (emphasis added)—not the School District's "deliberate indifference."

Second, the complaint lacks facts to suggest that the School District's "failure to train or supervise" otherwise constituted "deliberate indifference." *See Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. To meet this standard, a plaintiff must plead that a municipality's policymakers were on "notice" that a course of training or supervision was "deficient in a particular respect." *Id.* at 62. Pursuant to this notice requirement, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train [or supervise]." *Id.* Here, the allegations on which Plaintiffs rely to allege the School District's "deliberate indifference" are either irrelevant to the district's alleged failure to supervise, (SAC ¶¶ 176-78), or pertain to a single incident—the bus incident, (*id.* ¶¶ 26-46). However, even assuming that the School District's, Dell Transportation's, or the Disabilities Institute's response to the bus incident was unconstitutional, allegations of "a single incident of unconstitutional activity [are] not sufficient to impose liability under *Monell*." *City of Oklahoma*

*City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *see also Morales*, 59 F. Supp. 3d at 582 (same).

As the portions of the complaint pertaining to Count Two show, Plaintiffs seek to hold the School District liable only for the actions of non-policymakers during the bus incident. Thus, the Section 1983 claims in Count Two fail to satisfy *Monell*'s policy-or-custom requirement. *See Treadwell v. Cnty. of Putnam*, No. 14-CV-10137 (KMK), 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) ("*Monell* liability does not derive from individual incidents of wrongdoing by non-policymakers."); *see also Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *4 (S.D.N.Y. Dec. 11, 2023) ("[T]he very foundation of *Monell* liability rests upon the notion that 'isolated acts by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability.'" (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012)).

### *b. Count Three: Equal Protection Based on Race and Special Needs Status*

In Count Three, Plaintiffs assert that, in response to the bus incident, "GCUFSD by and through its agents, deprived Plaintiffs of equal protection of the law based on Plaintiffs' race and D.P.'s special needs status."[11] (SAC ¶ 161.) They allege that the School District "discriminated against D.P. based on his disability and/or race by . . . fail[ing] to have protocols and/or have protocols in place to ensure the safety of D.P." and that its "failure to follow proper protocols and/or failure to have proper protocols in place cased D.P. to suffer from restraint [sic], embarrassment, humiliations[,] and resultant physical injuries." (*Id.* ¶¶ 165-66.)

[11] The preceding paragraph identifies the School District's "agents" as Dell Transportation, the Disabilities Institute, and "Jane and John Does 1-10." (SAC ¶ 160.)

Plaintiffs fail to identify a specific policy, custom, or practice or explain how that policy caused them to suffer the alleged denial of their constitutional rights. That warrants dismissal. *See Connick*, 563 U.S. at 60; *see also McKiver v. City of New York*, No. 17-CV-4411 (GBD) (KHP), 2018 WL 3628840, at *5 (S.D.N.Y. July 23, 2018) ("Where a plaintiff fails to identify a specific policy, custom, or practice that caused the alleged constitutional violation, the claims against the municipality must be dismissed." (citing *Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011))).

Furthermore, to the extent that Count Three may be read as asserting a theory of inaction, it fails as a matter of law because "[i]naction can rise to the level of a municipal policy" only when "a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Savarese*, 547 F. Supp. 3d at 354 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). Here, Plaintiffs' equal protection claims arise solely from the bus incident and therefore fail to rise to the level of a pattern of misconduct that could compel the conclusion that the School District acquiesced in or tacitly authorized the conduct of the Dell Transportation and Disabilities Institute employees involved in the bus incident on September 7, 2022.

### D. Count Four: Section 1981

Count Four is dismissed for failure to state a claim against Dell Transportation or Huntington Hospital.

Dell Transportation and the Hospital Defendants argue that Count Four must be dismissed because Plaintiffs fail to allege specific facts demonstrating that: (1) the individual employees who interacted with D.P. on the Dell Transportation bus and with

Plaintiffs at Huntington Hospital would not have taken the alleged adverse actions toward Plaintiffs "but for" Plaintiffs' race; and (2) the rights enumerated in Section 1981 were affected. (Dell Mot. at 7-9; Hospitals Mot. at 11-14 ("but for"), 15 & n.7 (enumerated rights).) Plaintiffs respond that their Section 1981 claims against these defendants "are valid" because: (1) "the facts of racial animus are abundantly clear" given "Plaintiffs are Black and/or African American," (Pls.' Opp. at 22 (citing SAC ¶¶ 14-16)); and (2) "Plaintiffs have plausibly set forth they were not given full and equal benefits as would be given to white parents and white minors in [Huntington Hospital]," (*id.* at 23), and "denied the equal benefit of transportation to and from school by Dell and . . . their previously contracted for rights," (*id.* at 24). Dell Transportation and the Hospital Defendants reply that Plaintiffs fail to plead facts sufficient to meet the Supreme Court's "but for race" causation standard. (Dell Reply at 8-10; Hospitals Reply at 5-8.)

Section 1981 provides for equal rights in certain enumerated activities based on race, 42 U.S.C. §§ 1981(a), (b), and covers both public and private conduct, 42 U.S.C. § 1981(c). *See also Mwantuali v. Hamilton Coll.*, No. 22-CV-1395 (MAD) (ML), 2024 WL 1219752, at *13 (N.D.N.Y. Mar. 20, 2024) (same). Section 1981 provides, in pertinent part, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). To state a discrimination claim under Section 1981, "a plaintiff must allege facts supporting that (1) the plaintiff is a member of a racial minority; (2) [the] defendant's intent to discriminate on the basis of race; and (3) discrimination

concerning one of the statute's enumerated activities." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022). Importantly, a plaintiff must also plead causation: "that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

To satisfy Section 1981's "but for race" requirement, a plaintiff must plead facts suggesting that an enumerated right was denied "*because of his race*," that the defendant "had a policy" of denying the right to the plaintiff's entire racial group, or that the plaintiff "was treated differently than other 'similarly situated' [comparators]" outside the plaintiff's protected group. *Felder*, 27 F.4th at 848 (emphases in original). Allegations of "mistreatment" or "naked assertions of race discrimination," without supporting facts, are "insufficient to state a Section 1981 claim." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001); *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014). Instead, "to survive a motion to dismiss, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000); *see also Fouche*, 64 F. Supp. 3d at 457 (same). "Fact-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Dove*, 56 F. Supp. 2d at 338.

Assuming *arguendo* that Dell Transportation and Huntington Hospital's challenged acts amount to discrimination concerning one of Section 1981's enumerated activities, the complaint lacks sufficient allegations of racial animus and intentional discrimination to state a cognizable claim. *See Comcast*, 589 U.S. at 339 ("[A] § 1981 plaintiff first must show that he was deprived of the

protected right and then establish causation . . . these two steps are analytically distinct.").

1. Dell Transportation

Plaintiffs identify two sets of facts that purportedly show Dell Transportation's racial animus and that such animus was the "but for" cause of its discrimination of D.P.: (1) that Ms. Blacknor "made Dell aware that D.P. needed" certain equipment to "ride the bus to and from school safety," which was allegedly not provided; and (2) that Dell Transportation's actions toward D.P. in response to the bus incident "were not the same to the white children on the bus" because it "drew attention specifically to D.P. rather than all of the other white children on the bus" and called the police "only . . . for D.P. and no other child." (Pls.' Opp. at 24.) These allegations are not sufficient to give rise to an inference of "but for race" causation.

Plaintiffs' first argument that Dell Transportation failed to meet D.P.'s equipment needs because of his race suffers from several deficiencies. First, contrary to Plaintiffs' characterization of the alleged facts in their brief, their allegations in the complaint state that all the necessary equipment was, in fact, provided to D.P. by Dell Transportation on September 7, 2022.[12] (SAC ¶ 32.) Even assuming *arguendo* that Dell Transportation had failed to provide the equipment on that day, this allegation would not give rise to the inference of "but for race" causation because allegations of "mistreatment," without more, are "not sufficient to establish" race-based animus. *Lizardo*, 270 F.3d at 102; *see also Pointer v. Columbia University*, No. 95-CV-8418, 1997 WL 86387 (JFK), at

[12] Plaintiffs allege that on the day prior to the bus incident, Dell Transportation failed to provide "window padding" in the morning and "the strap necessary to secure D.P.'s harness" in the afternoon. (SAC ¶¶ 28-30.) On the morning of September 7, 2022, Ms. Blacknor personally observed that the proper equipment necessary to safely transport D.P. was on the bus—including the protective window mat and harness strap. (*Id.* ¶ 32.)

*5 (S.D.N.Y. Feb. 28, 1997) (dismissing Section 1981 claim because plaintiff did "not allege any facts supporting an inference that this poor treatment was motivated by race discrimination"). Finally, the complaint's conclusory allegations of disparate treatment, intentional discrimination, and racial animus with respect to the safety equipment and staffing levels that Dell Transportation provided to D.P. are unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of D.P.'s protected class being treated differently. (SAC ¶¶ 174-76, 178.) Therefore, Plaintiffs' first argument fails because it is only supported by insufficient "conclusory and speculative statements." *Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 106 (S.D.N.Y. 2023); *see also Dove*, 56 F. Supp. 2d at 338 ("Conclusory or naked allegations will not suffice.").

Plaintiffs' second argument, which relies on allegations regarding Dell Transportation's disparate treatment of D.P. as compared to its treatment of the white students on the bus on September 7, 2022, also fails to establish the requisite "but for" causation. As already explained, "'a single instance of allegedly discriminatory conduct, unless extraordinarily severe, generally cannot sustain a claim' under Section 1981." *Mazzei v. Brevecki, et al.*, No. 26-CV-01671 (NCM) (PCG), 2026 WL 2601614, at *3 n.6 (E.D.N.Y. Sept. 3, 2026). Even so, Plaintiffs' allegations fail to show D.P. and his alleged comparators were similarly situated. For example, the complaint does not allege that the white students on the bus had also become violent toward themselves or others. Nor does it allege that these students were similar to D.P. in other material respects, including their age, special needs, transportation accommodations, or ability to communicate. There is also no allegation that at any point a white student's similarly harmful aggressive behavior on a Dell Transportation bus was ever met with any different response. Based on the allegations in the complaint, Dell Transportation's decision to call first responders

resulted from D.P.'s behavior—not his race. (SAC ¶¶ 57, 80-81, 129.)

Plaintiffs fail to plead sufficient facts suggesting that Dell Transportation denied D.P. safe transportation *because of* his race. They also do not offer any allegations suggesting that Dell Transportation had a policy of not safely transporting Black students, or that D.P. was treated differently than other "similarly situated" white students transported by Dell Transportation. Thus, the complaint fails to state a Section 1981 claim against Dell Transportation. *See Felder*, 27 F.4th at 848; *Smalls v. Amazon.com Servs. LLC*, No. 20-CV-5492 (RPK) (RLM), 2022 WL 356432, at *6 (E.D.N.Y. Feb. 7, 2022), *aff'd*, No. 22-615, 2022 WL 17491259 (2d Cir. Dec. 8, 2022).

2. Huntington Hospital

Plaintiffs argue that Huntington Hospital's "intentional confinement" of D.P., "intentional disregard[ ]" for Ms. Blacknor and Mr. Pearson, and "drug test[ing] of young D.P. for Phencyclidine (PCP)" are sufficient to allege racial animus because they are Black and the nurse and doctor who treated D.P. are white. (Pls.' Opp. at 22-23.) However, rather than identify "specific facts" showing that "but for" their race they would have been treated differently, Plaintiffs merely point to labels alleged in the complaint that do not demonstrate the required intent. For example, allegations that one nurse is "Caucasian" without facts to support that she subjected D.P. to less favorable treatment *because* he is Black, (*see* SAC ¶¶ 179-80), are not sufficient to state a Section 1981 claim, *see, e.g.*, *Thomas v. Amazon.com Servs. LLC*, No. 23-CV-01271 (HG) (JAM), 2025 WL 253276, at *7 (E.D.N.Y. Jan. 21, 2025) (citing *Fouche*, 64 F. Supp. 3d at 457).

For the same reasons explained above, Plaintiffs' bald assertions that Huntington Hospital allegedly mistreated them "due to" its "animus" toward their heritage, color, and race, (SAC

¶¶ 174, 179-81, 184-86), are insufficient to survive a motion to dismiss. Plaintiffs' allegation that one doctor specifically asked D.P.'s special education providers (who are "Caucasian") instead of D.P.'s parents (who are Black) whether they thought it was okay to discharge him, (*id.* ¶ 188), does not change the court's conclusion. The complaint alleges that at least one of these women rode with D.P. in the ambulance to Huntington Hospital, that all three women were with D.P. for the entirety of his hospital stay (including before Ms. Blacknor's arrival), and were more familiar with the events leading to D.P.'s hospitalization than D.P.'s parents. (*Id.* ¶¶ 33-36, 39, 51, 57-59, 62.) Finally, Plaintiffs offer no facts suggesting that similarly situated white patients were treated differently from D.P. or that similarly situated white parents were treated differently from Ms. Blacknor and Mr. Pearson at Huntington Hospital.

In sum, the complaint lacks facts suggesting that Huntington Hospital discriminated against Plaintiffs *because of* their race. Plaintiffs offer no allegations suggesting that Huntington Hospital had policies to unnecessarily restrain, confine, or drug test Black patients, or ignore, disrespect, or otherwise disregard Black parents. Plaintiffs also do not allege that they were treated differently than other "similarly situated" white patients and parents at Huntington Hospital. Thus, Plaintiffs fail to state a Section 1981 claim against Huntington Hospital. *See Felder*, 27 F.4th at 848.

### E. Dismissal with Prejudice

The court denies leave to amend and dismisses the complaint with prejudice because Plaintiffs have been afforded ample opportunities to replead and any amendment would be futile.

Rule 15 provides that "if a party has already amended its pleading," it "may amend its pleading only with the opposing party's written consent or the court's leave." *MSP Recovery Claims, Series*

*LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting Fed. R. Civ. P. 15(a)(1)-(2)). "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.*; *see also Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999) ("[A] district court may properly deny leave when amendment would be futile."). "Repeated failure to cure deficiencies by amendments previously allowed can constitute a reason to deny leave to amend." *MSP Recovery Claims*, 66 F.4th at 90 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already filed two amended complaints in response to the Moving Defendants' letter requests for pre-motion conferences and after being specifically directed to address the pleading deficiencies identified in those letters and on the record at the July 17, 2025 pre-motion conference and the initial status conference before Magistrate Judge Shields on July 30, 2025. (Min. Entry Dated 7/17/2025; Initial Conf. Tr.) Plaintiffs have either declined to address those deficiencies, or they have added allegations and those allegations still fail to state a claim against any defendant for reasons explained above. (*Compare* Compl., *and* First Am. Compl., *with* SAC.) Although Plaintiffs request leave to amend, (Pls.' Opp. at 25), they do not indicate that they are in possession of any additional facts that could cure the legal deficiencies identified in this Memorandum and Order. *See Fiore v. N. Shore Radiation Therapy*, No. 24-CV-3164 (MKB), 2026 WL 1469451, at *15 (E.D.N.Y. May 26, 2026) (denying leave to amend because plaintiff declined to fix deficiencies in the complaint after notice of those deficiencies and plaintiff did not suggest she was in possession of facts that would cure the deficiencies identified in the court's opinion). Because Plaintiffs have given no indication of how a third amended complaint could cure the flaws the court has identified above, Plaintiffs "need not be given leave to amend." *TechnoMarine SA v. Giftports, Inc.*, 758

F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."); *see also Thompson v. City of New York*, No. 21-CV-08202 (JLR), 2024 WL 1216534, at *12 (S.D.N.Y. Mar. 21, 2024) (applying the same rule to deny leave to amend), *aff'd*, No. 24-1051, 2024 WL 4586530 (2d Cir. Oct. 28, 2024).

Moreover, dismissal with prejudice is warranted because "[c]onstruing the complaint liberally," Plaintiffs' allegations suggest that their claims suffer from "substantive" pleading deficiencies that cannot be fixed. *Fiore*, 2026 WL 1469451, at *15-16 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Count One fails against the Disabilities Institute, Dell Transportation, and the Hospital Defendants because these defendants are private, not public, entities. This fact, which was discussed on the record prior to the filing of the Second Amended Complaint, remains fatal to Plaintiffs Title II claims against these Private Defendants.

Plaintiffs' allegations also suggest that they would not be able to state a Title II claim against the School District—even if they were to request damages other than for emotional distress. "A qualified individual can base a [Title II] discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Nevertheless, Plaintiffs make no allegations suggesting that the School District acted with D.P.'s disability in mind, which forecloses their ability to assert claim under a theory of disparate treatment. *See Williams v. Barometre*, No. 20-CV-7644 (KMK), 2022 WL 903068, at *17 (SD.N.Y. Mar. 28, 2022); *see also Doherty v. Bice*, No. 18-CV-10898, 2020 WL 5548790, at *7 (S.D.N.Y. Sept. 16, 2020). Plaintiffs make no allegation that can be liberally interpreted as describing disparate

impact, which requires both "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). Plaintiffs also make no claim that they requested a specific accommodation from the School District or that any such request was denied, which forecloses a failure to accommodate claim. *See McNiece v. Connecticut*, 692 F. App'x 655, 656 (2d Cir. 2017) (summary order); *see also Hamilton v. Westchester Cnty.*, No. 18-CV-8361 (NSR), 2022 WL 4087956, at *4 (S.D.N.Y. Sept. 6, 2022) (dismissing Title II reasonable accommodation claim because the plaintiff "has not alleged he had requested any accommodations or that any such request was denied").

In addition to the fatal pleading deficiencies identified in Plaintiffs' Section 1983 claims, *supra* Sections III.C.1 (no state action), III.C.2 (no *Monell* liability), Plaintiffs' "negligent supervision" claims fail because "[S]ection 1983 liability may not be premised upon negligence." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 n.5 (2d Cir. 1991) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986); and then citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Cash v. Cnty. of Erie*, 654 F.3d 324, 343 (2d Cir. 2011) ("mere negligence is not enough" to sustain Plaintiffs' Section 1983 failure-to-supervise claim).

In addition to the fatal pleading deficiencies identified in Count Four, *supra* Section III.D, Plaintiffs' allegations suggest that they cannot meet Section 1981's enumerated right requirement. Despite arguing that they "were denied their previously contracted for rights," (Pls.' Opp. at 24), Plaintiffs have not and cannot proceed on a contract theory against Dell Transportation given that—as Plaintiffs acknowledge—it is the School District (not Plaintiffs) who have a contract with the bus company, (*id.* at 25). Plaintiffs also fail to identify any specific law or legal proceeding

related to the "security of persons and property" that Huntington Hospital allegedly violated. *See Bishop v. Best Buy, Co. Inc.*, No. 08-CV-8427 (LBS), 2010 WL 4159566, at *5 (S.D.N.Y. Oct. 13, 2010), *aff'd sub nom. Bishop v. City of New York*, 518 F. App'x 55 (2d Cir. 2013) (summary order).

Finally, any amendment of Plaintiffs' discrimination claims that seek relief for the denial of a FAPE to D.P. that is also available under the IDEA would be futile because, as Plaintiffs' counsel admits, Plaintiffs "have not exhausted" the IDEA's administrative requirements. (Initial Conf. Tr. at 20:04.)

For the above reasons, each of Plaintiffs' claims suffer from a number of fatal deficiencies. Construing the complaint liberally, these flaws are substantive and go beyond inartful pleading. Consequently, the court declines to permit Plaintiffs to file a third amended complaint. *See Fiore*, 2026 WL 1469451, at *16 (collecting cases).

## IV. CONCLUSION

For the reasons set forth above, the Second Amended Complaint is DISMISSED WITH PREJUDICE.

SO ORDERED.

Dated: Brooklyn, New York
October 30, 2026

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge